IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SAFE SKIES CLEAN WATER WISCONSIN, INC.,
    Plaintiff,
    1148 Williamson St.
    Madison, WI 53703,

        v.                       Docket No. 20-cv-1086

NATIONAL GUARD BUREAU,
    3501 Fetchet Avenue
    Joint Base Andrews, MD 20762-5157,

    and

GENERAL DANIEL R. HOKANSON,
    CHIEF, NATIONAL GUARD BUREAU,
    111 S. George Mason Dr.
    Arlington, VA 22204,
.
    Defendants.

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

### INTRODUCTION

1.     Safe Skies Clean Water Wisconsin ("Safe Skies") challenges a decision of the National Guard Bureau ("NGB") to issue an Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") for Construction and Demolition Projects at the 115th Fighter Wing Installation, Dane County Regional Airport, Madison, Wisconsin, instead of issuing an Environmental Impact Statement ("EIS").

2.     Safe Skies' claims arise under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*; the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d); and the Administrative Procedure Act ("APA"), 5 U.S.C. 701 *et seq.*

1

3. Department of Defense (DoD) Directive 5105.77 established the National Guard Bureau ("NGB") as a joint activity of the DoD, and describes the organization and management of the NGB, which includes the Director of the Air National Guard ("ANG").

4. The ANG is a federal military reserve force of the U.S. Air Force ("Air Force").

5. The NGB, on behalf of the ANG, prepared an EA to evaluate the potential consequences to the human and natural environment that would result from implementation of construction and demolition projects ("the Project") at the 115th Fighter Wing ("115 FW") of the Wisconsin Air National Guard ("WIANG").

6. The NGB acted illegally by a) preparing an EA rather than an EIS as required by NEPA, 42 U.S.C. § 4332(2)(c), and failing to adequately study and disclose the major and significant environmental effects of the project; b) by issuing a FONSI, thereby disregarding the major and significant environmental effects of the project; and c) acting arbitrarily, capriciously and with abuse of discretion, or otherwise not in accordance with the law, and without observance of procedure required by NEPA and the APA.

## JURISDICTION

7. This Court has jurisdiction under 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the National Environmental Policy Act, 42 U.S.C. §§ 4331 *et seq*.; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; the Declaratory Judgment Act, 28 U.S.C. 2201-2202; and the Equal Access to Justice Act, 28 U.S.C. § 2412.

8. An actual, justiciable controversy exists between plaintiff and defendants. The requested declaratory judgment relief is therefore proper under the Declaratory Judgment Act, 28 U.S.C. 2201-2202; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

9. The United States has waived sovereign immunity with respect to the claims raised herein under 5 U.S.C. § 702. Plaintiff has exhausted all administrative remedies and has no adequate remedy at law.

## VENUE

10. Venue is proper in this Court under 28 U.S.C. 1391(e).

## PARTIES

11. Safe Skies Clean Water WI, Inc. ("Safe Skies") is a nonprofit corporation organized under the laws of Wisconsin.

12. Safe Skies' purpose is to educate the public concerning the dangers inherent in basing F-35A Joint Strike Fighter jets at Truax Air National Guard base in Madison as well as the need for the NGB, Air National Guard and Air Force to clean-up existing contamination of groundwater, surface water, drinking water and soils, caused by the use of fire-fighting foams and other materials on the base.

13. Safe Skies is concerned about the large amount of per- and polyfluoroalkyl substances ("PFAS") emitted from the base and known to be polluting municipal wells, particularly in low-income neighborhoods near the airport, as well as the groundwater, soils, Starkweather Creek and Lake Monona, which may eventually affect the entire Yahara chain of lakes.

14. Safe Skies is also concerned about the noise impacts from the F-16s and the proposed F-35s.

15. Safe Skies accomplishes its mission by informing the local citizenry of the NGB's plans and their potential negative environmental and socioeconomic impacts on the community by means of a website, newsletters, forums and public activity. It has a mailing list of over 2,000 people.

16. Since 2019, Safe Skies has sponsored a series of public forums, appeared on radio shows, and brought speakers to Madison for presentations, press conferences and interviews.

17. Many of Safe Skies' supporters reside in locations that have and will suffer the impacts of the increased emissions of PFAS that will result from the construction activities authorized in the EA in that they drink from wells that already have PFAS in them, and some eat fish from Starkweather Creek that also have PFAS in them.

18. Many of Safe Skies' supporters reside near the Airport and in the flight path and those supporters will suffer greatly from the increased noise the F-35s will bring to Madison.

19. The NGB, is a joint activity of the Department of Defense (DOD Directive 5105.77.)

20. The NGB, as an agency of the federal government, is required to comply with various laws and regulations, including the National Environmental Policy Act ("NEPA"; 42 U.S.C. §§ 4321 *et seq*.), the Council on Environmental Quality's NEPA regulations, 40 C.F.R. Parts 1500 to 1508, and the Air Force's own NEPA-implementing regulations, 32 C.F.R. Part 989.

21. The NGB is the lead agency for the EA pursuant to 40 C.F.R. §§ 1501.5 and 1508.5.

22. General Daniel R. Hokanson is the current Chief of the National Guard Bureau. He is named as a defendant in his official capacity.

## FACTUAL BACKGROUND

### The 115th Fighter Wing and the Project

23. The 115th Fighter Wing ("115 FW") is a unit of the Wisconsin Air National Guard, ("WIANG") which is stationed at Truax Field Air National Guard Base, Madison, Wisconsin.

24. Since 1942, the Truax Field Base has stored petroleum and various types of hazardous materials including fire-fighting foam.

25.  In 2015 and 2017, the NGB commissioned a study of nine potential release sites ("PRLs") that could be releasing perfluorinated compounds ("PFCS" – referred to as PFOAs in this Complaint) (perfluorobutane sulfanate ("PFBS"), perfluorooctanoic acid ("PFOA"), and perfluorooctane sulfanate ("PFOS"). The Final Report prepared for the NGB was released in October 2019.

26.  The Final Report shows that there is PFAS contamination in excess of the USEPA guidelines in soil in two of the sites, and in the groundwater at all nine sites including at the base boundary.

27.  The Report recommended further investigation at all nine sites to determine the nature and extent of the PFAS release on and off the base in soil and groundwater.

28.  In October, 2019, the NGB issued an EA and FONSI for 27 separate construction and demolition actions (hereinafter, "sub-parts" of the Project) at the 115th Fighter Wing Installation, Dane County Regional Airport, Madison, Wisconsin.

29.  The purported purpose of the Project is to: "provide the facilities and training opportunities necessary to ensure that the 115 FW can accomplish their mission in a safe and efficient manner. For the 115 FW to continue to meet their mission goals, the NGB needs to provide facilities that are properly sized and configured to meet the demands of the continuously evolving mission of the 115 FW. The proposed construction and renovation projects will improve mission efficiency by improving base access and utilities, consolidating mission functions, and upgrading facilities to meet current safety and security standards. The proposed demolition actions will remove excess, obsolete, deteriorating, and underused facilities."

30.  New construction will result in the disturbance of 25.1 acres of land, and a net increase of 1.2 acres of new impervious surface.

5

31. Preliminary estimates of the construction required place the total cost of construction, demolition, and renovation between 40 and 60 million dollars.

32. At the same time that the Report on PFAs was issued and that the NGB was drafting and submitting the EA for comments, the Air Force was preparing an Environmental Impact Statement ("EIS") for the F-35A Operational Beddown Air National Guard.

33. The draft EIS was put out for Comment on February 7, 2019, and the draft EA put out for Comment on April 7, 2019.

34. The EIS was finalized in February 2020, just a few months after the EA was finalized.

35. On page 1-1 of the EIS, the Air Force states, "The F-35A would replace the existing F-15, F-16, or A-10 fighter attack aircraft…."

36. The work in the EA is not being done with the expectation for keeping F-16s at Truax, but is being done in preparation for F-35s.

37. The EIS for the F-35 and EA for this Project are improperly separated.

## The City of Madison's Drinking Water Supply and PFAS in Wells

38. The City of Madison relies on wells for its public drinking water supply.

39. The City has been aware of PFAS problems in drinking water for years, and the City has detected PFAS in every well in Madison.

40. The municipal well closest to Truax Air Field ("Well No. 15") was shut down in 2019 by the City of Madison due to the PFAS contamination in that well.

41. The City is monitoring all other municipal wells, with the highest levels of PFAS contamination indicated near and southeast of the base.

42. As the Final Report shows, PFAS are known to be present in groundwater at Truax Field.

6

**The 303(d) Impaired Waters in the Madison Area**

43. The west branch of Starkweather Creek drains the area around the Airport and flows into Lake Monona.

44. Both Starkweather Creek and Lake Monona are on the 2018 Wisconsin Impaired Waters List for multiple pollutants.

45. The 2019 report on PFAS found that PFAS levels in groundwater samples were *569 times* the EPA health advisory level.

46. Soil PFOS levels were up to *29 times* the EPA health advisory level in one location.

**CLAIMS FOR RELIEF**

**Count I**
**Violation of NEPA – Failure to Prepare an Environmental Impact Statement**

47. Plaintiff realleges and incorporates by reference the preceding paragraphs.

48. NEPA requires that federal agencies prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c).

49. The NGB's issuance of a FONSI and its accompanying EA in lieu of an EIS violates NEPA because the construction activities, taken together, are a major Federal action with significant cumulative and secondary environmental impacts. In determining that no EIS was required with respect to the project, the NGB failed to comply with NEPA.

50. The EA fails to take a hard look at the effects of the construction and land disturbance on the soil and water and potential releases of hazardous substances.

**Count II**
**Violation of NEPA – Failure to Prepare a Supplemental Environmental Assessment**

51. Plaintiff realleges and incorporates by reference all preceding paragraphs.

52. CEQ regulations require agencies to supplement an EA or EIS if the agency makes substantial changes to the proposed action or significant new circumstances or information arise bearing on the proposed action or its impacts. 40 C.F.R. § 1502.9(c)(1).

53. In the same month that the EA was issued, in October, 2019, high levels of PFAS were found in Starkweather Creek, and the Wisconsin Department of Natural Resources ("DNR") sent a letter to the City, Dane County and National Guard notifying them that all were legally responsible for contamination at two "burn pits" where firefighters had trained with PFAS foams.

54. Also in October 2019 the Mayor of the City of Madison called on the Air National Guard to address contamination at Truax Field.

55. There is no evidence the ANG addressed the contamination.

56. In November 2020, the City sought additional funds for PFAS testing and planning at the Dane County Regional Airport, Air National Guard 115th Fighter Wing Base, and surrounding area.

57. The NGB should supplement this EA after conducting the testing sought by the DNR and City of Madison.

## Count III
### Violation of NEPA – Improper Segmentation of Projects

58. Plaintiff realleges and incorporates by reference all preceding paragraphs.

59. NEPA prohibits separating major projects into segments.

60. The NGB improperly segmented this project from the F-35 Operational Beddown Project, because the purpose of this project is to prepare for the F-35s to be brought to Madison.

61. Actions that are "similar" or "connected" or that have cumulative effects must be considered together in one EIS. 40 C.F.R. § 1508.25(a).

8

62. The Proposed Action in the EA is assumed completed in the EIS and neither document looks at the totality of the impacts.

63. Neither document looks at the totality of increased PFAS emissions from land disturbance and creation of impervious surfaces and their potential impact on groundwater and drinking water.

64. The EA also discusses a much smaller amount of greenhouse gases that will be emitted than if the projects were discussed together.

65. Because the F-35 Beddown assumes the completion of this Project and because the F-35 Beddown and this Project are similar and connected and have cumulatively significant environmental effects, defendants should have evaluated both projects in one EIS.

## Count IV
## Violation of NEPA – Failure to Consider Cumulative Impacts

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.

67. CEQ regulations require an agency to consider the "direct," "indirect," and "cumulative" impacts of a proposed action. 40 C.F.R. § 1508.25. "Effects includes ecological (such as the effects on natural resources and on the components, structures, and functioning of affected ecosystems), aesthetic, historic, cultural, economic, social, or health, whether direct, indirect, or cumulative." 40 C.F.R. § 1508.8.

68. The NGB violated NEPA by failing to consider the cumulative impacts of this Project on the environment and the health of the public.

69. The adverse health impacts could include increased PFAS emissions in Starkweather Creek, Lake Monona, public drinking water systems, in fish consumed by the public, in climate-change causing pollutants released from the construction, and in the deafening noise and air and water pollutants from the F-35s.

70. Additional adverse impacts are that water bodies already classified as impaired under Section 303(d) of the Clean Water Act could be made even more polluted by the increased amounts of PFAS and other toxins that will migrate from the base into the groundwater and stormwater.

71. The NGB failed to describe cumulative impacts associated with the proposed F-35 Beddown project.

## Count V
### Violation of NEPA – Failure to Adequately Consider Environmental Justice

72. Plaintiff realleges and incorporates by reference all preceding paragraphs.

73. Executive Order 12,898 requires federal agencies to determine whether a project will have a disproportionately adverse effect on minority and low-income populations. 59 Fed. Reg. 7629 (Feb. 16, 10040).

74. The NGB failed to take a hard look at the impacts of the Project on low-income and minority communities.

75. The NGB never implemented a detailed community outreach strategy aimed at gaining local input from all communities that would be affected and did not specify targeted activities to reach low income and/or minority communities.

76. The EA points out that 18% of the City of Madison's low-income population lives in the vicinity of the 115 FW installation, but claims that no pollutants will leave the site during the work on the Project and therefore low-income and minority populations will not be adversely affected.

77. The NGB has not completed the investigation recommended in the 2019 Report to determine the extent to which PFAS are migrating off-base.

78. The City of Madison did find that the PFAS migrated off-base and the City closed Well No. 15.

79. As PFAS continue to migrate off-base, the pollutants will have a disproportionate impact on low-income and minority populations who live near the Base, drink from the City water, fish in Starkweather Creek for subsistence fishing, and live and recreate near the contaminated soil.

## Count VI
### Violation of NEPA – Failure to Adequately Address Alternatives

80. Plaintiff realleges and incorporates by reference all preceding paragraphs.

81. The defendants failed to take a hard look at the alternatives. The NGB failed to consider completing only the sub-projects which would not result in land disturbance and therefore not have the potential to increase emissions of PFAS.

## Count VII
### Violation of NEPA – Failure to Adequately Consider Climate Change

82. Plaintiff realleges and incorporates by reference all preceding paragraphs.

83. The NGB glosses over the significance of its actions by saying that impacts of greenhouse gas emissions will "contribute incrementally" to the problem.

84. This work is being done in preparation for the F-35s to be located at Truax and those planes will contribute greatly to greenhouse gas emissions.

85. The NGB fails to consider the effects that climate change will have on soil and groundwater emissions.

86. The EA fails to take an adequate look at the fact that one-hundred- year storm events are occurring with increasing frequency and fails to account for increased storm frequency and the effect that will have on soil and groundwater emissions.

## Count VIII
## Violation of NEPA and the APA – Failure to Provide Adequate Notice and Public Participation

87. Plaintiff realleges and incorporates by reference all preceding paragraphs.

88. The NGB violated the public participation and notice requirements of NEPA and implementing regulations by failing to inform the public of its proposed action and failing to allow for meaningful and timely public involvement.

89. The two brief notices in the print edition of the Wisconsin State Journal on April 7 and April 21, 2019, were inadequate to provide meaningful access to neighbors of the Project.

90. The NGB should have placed notices in community centers and in the affected neighborhoods, and notices in free publications or places.

91. Therefore, the approval is arbitrary, capricious, an abuse of discretion, and not in accordance with the law under NEPA and the APA.

## Count IX
## Violation of the Administrative Procedure Act

92. Plaintiff realleges and incorporates by reference the preceding paragraphs.

93. The actions of the NGB as described above are arbitrary, capricious, and an abuse of discretion; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; unsupported by substantial evidence; and unwarranted by the facts. 5 U.S.C. § 706(2)(A), (C), (D), (E), (F).

## DEMAND FOR RELIEF

WHEREFORE, plaintiff prays that this Court make and enter its order:

1. Declaring that:

    A. In issuing an EA and FONSI, the NGB failed to comply with NEPA by failing to issue an EIS;

    B.    The NGB violated NEPA by failing to prepare a Supplemental EA;

    C.    The NGB failed to comply with NEPA by improperly segmenting this Project from the F-35 Beddown Project;

    D.    The NGB failed to comply with NEPA by failing to consider cumulative impacts;

    E.    The NGB violated NEPA by failing to adequately consider environmental justice concerns;

    F.    The NGB violated NEPA by failing to take a hard look at alternatives;

    G.    The NGB violated NEPA by failing to adequately consider Climate Change;

    H.    The NGB violated NEPA by failing to provide adequate notice; and

    I.    The NGB violated the APA by failing to comply with NEPA.

2. After hearing, permanently enjoin the defendants and all others acting in concert with them from carrying on or permitting any activities in furtherance of the construction of the project until such time as the defendants prepare a supplemental environmental assessment and an environmental impact statement, the sufficiency of the environmental assessment and/or environmental impact statement to be determined by this Court.

3. Awarding plaintiff such other and further relief as the Court may deem just and proper, including costs, attorneys' fees, expert witness fees and other expenses of litigation;

4. Awarding such other relief as the Court deems just and proper.

                                  <u>s/ Kathleen G. Henry</u>
                                  Kathleen G. Henry (WI Bar No. 1118591)
                                  Dairyland Public Interest Law
                                  PO Box 352
                                  Madison, WI 53701
                                  (608) 213-6857
                                  khenry@dairylandpublicinterestlaw.com

                                  *Attorneys for Plaintiff*